UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 13-21577-MER |
| WORLDWIDE ENERGY & | ) | |
| MANUFACTURING USA, INC. | ) | |
| EIN: 77-0423745 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

## MOTION FOR ORDER APPROVING SETTLEMENT OF CLAIM
## AND ALLOWANCE AND ASSIGNMENT OF CLAIM

The Debtor, Worldwide Energy & Manufacturing USA, Inc. ("Debtor"), by and through its attorneys, Kutner Brinen Garber, P.C., moves the Court for entry of an order approving the Debtor's Agreement For Settlement, Allowance, and Assignment of General Unsecured Claim ("Agreement"), and as grounds therefor states as follows:

1.      The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on July 5, 2013 and the Debtor remains a debtor-in-possession.

2.      The Debtor is an international manufacturing and engineering firm making various parts in China, including solar panels, aerospace parts, electronic parts, and various parts related to other industries.  The Debtor owns interests in various subsidiaries in China. The Debtor's business includes being an intermediary between customers and subcontractors, as well being as a direct manufacturer of certain parts through its subsidiaries.

3.      The Debtor was represented by the law firm of Moye White LLP ("Creditor") pre-petition particularly with respect to certain litigation brought by various shareholders to compel a shareholder meeting and vote.  The Debtor's retention of Creditor was discontinued pre-petition, in February 2013.

4.      As of the Petition Date, the Debtor owed the Creditor the sum of $398,980.83 for unpaid legal fees and costs.  The amount of the claim is reflected in the Proof of Claim filed by the Creditor in this case ("Claim").

5.      At the time the Debtor's case was filed, the Debtor was not sure whether or not it held a claim against the Creditor that could offset their Claim.  The Debtor has since determined that a viable claim against Creditor does not exist.

6.      The Creditor is interested in selling its Claim in order to obtain an immediate cash payment. The party who is interested in acquiring the Creditor's Claim will do so; however, they

have requested assurance that once they acquire the Claim, the Debtor will not object to the Claim.

7.      The party who will purchase the Creditor's Claim is Teresa A. McClaran ("TAM"). TAM is a minority shareholder of the Debtor's common stock. TAM is also the sister of Diane Thelen who is also a shareholder and was previously an officer and insider of the Debtor. Diane Thelen is no longer either an officer or director of the Debtor.

8.      TAM has agreed to pay Creditor the sum of $110,000 to acquire the Creditor's Claim provided it is an allowed claim in this case. TAM is the purchaser of the Claim, but other non-Debtor parties have provided TAM with some of the funds that she is using to acquire the Creditor's Claim.

9.      A copy of the Agreement is attached to this Motion and incorporated herein as Exhibit A. To the extent that the terms of the Agreement conflict with this Motion, the terms of the Agreement will control.

10.      The Agreement provides that the Debtor does not hold any claim against the Creditor and generally releases the Creditor from any claim, known or unknown.

11.      The Agreement also provides that the Creditor will turn over to the Debtor all of the client files it has put together pre-petition, except for attorney work product. The files are substantial and needed by the Debtor in order to better understand the Debtor's pre-petition activities. Due to management turnover pre-petition, a number of records were lost and information must be reconstructed.

12.      Settlement of the Creditor's Claim is in the best interest of the Debtor and the estate because it will reduce litigation expenses between the Debtor and the Creditor, allow the Creditor to turn over to the Debtor the files held by the Creditor, and enable the sale of the Creditor's claim to an individual who is interested in seeing the Debtor's case end with a positive result.

13.      Claims are generally transferrable between parties and the purchaser of the Creditor's Claim is required under the Agreement to file a notice of claim assignment pursuant to Bankruptcy Rule 3001(e)(2).

WHEREFORE, the Debtor prays that the Court make and enter an order approving the Agreement, approving the transfer of the Creditor's Claim to TAM pursuant to the Agreement, and for such further and additional relief to the Court may appear proper.

2

Dated: August 30, 2013             Respectfully submitted,

By:   _____

Lee M. Kutner, #10966
**KUTNER BRINEN GARBER, P.C.**
303 East 17th Avenue, Suite 500
Denver, CO 80302
Telephone: (303) 832-2400
Facsimile: (303) 832-1510
E-Mail: lmk@kutnerlaw.com

3

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 30, 2013, a copy of the **MOTION FOR ORDER APPROVING SETTLEMENT OF CLAIM AND ALLOWANCE AND ASSIGNMENT OF CLAIM** was served by U.S. Regular Mail in accordance with FED. R. BANKR. P. 2002 and 11 U.S.C. § 342(c), (if applicable), on the following interested parties at the addresses below:

Alan K. Motes, Esq.
United States Trustee's Office
999 18th Street, Suite 1551
Denver, CO 80202

James T. Burghardt, Esq.
Moye White, LLP
1400 16th Street
6th Floor
Denver, CO 80202-1473

Sonia Chae, Esq.
Securities and Exchange Commission
175 West Jackson Blvd.
Suite 900
Chicago, Illinois 60604

Carla B. Minckley, Esq.
Thomas D. Birge, Esq.
Birge & Minckley, P.C.
9055 East Mineral Circle
Suite 110
Centennnial, CO 80112-3457

Catherine Scholmann Robertson, Esq.
Pahl & McCay
225 West Santa Clara Street
Suite 1500
San Jose, CA 95113


*s/ Angela R. Upton*
Angela R. Upton

## AGREEMENT FOR SETTLEMENT, ALLOWANCE, AND ASSIGNMENT OF GENERAL UNSECURED CLAIM

This Agreement for Settlement, Allowance, and Assignment of General Unsecured Claim ("**Agreement**") is dated effective as of August ___, 2013, and is by, between, and among the following parties:

(i)    Worldwide Energy and Manufacturing USA Inc., a Colorado corporation ("**Debtor**");

(ii)   Moye White LLP, a Colorado limited liability law partnership ("**Creditor**"); and

(iii)  Teresa A. McClaran ("**Purchaser**").

Debtor, Creditor, and Purchaser may each be referred to hereinbelow individually as a "**Party**", or collectively as the "**Parties**".

### Recitals

A.    On July 5, 2013, Debtor commenced a bankruptcy case pursuant to Chapter 11 of Title 11, United States Code ("**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Colorado ("**Bankruptcy Court**"), identified as Case No. 13-21577 MER ("**Bankruptcy Case**"). Debtor remains in possession of its assets and in control of its business as a debtor-in-possession.

B.    Creditor formerly served as legal counsel to Debtor. Creditor is the holder of a general unsecured claim for unpaid prepetition legal fees, costs, expenses, and contractual interest, in the total amount of $398,980.83 ("**Creditor's Claim**"). On August 16, 2013, Creditor filed a Proof of Claim based on Creditor's Claim. Creditor's Proof of Claim has been identified as Claim 4-1 in the official records of the Bankruptcy Case.

C.    In Schedule F of Debtor's Amended Bankruptcy Schedules filed on August 2, 2013, Debtor identified the claim of Creditor as being in the amount of $378,741.48 and described it as "disputed."

D.    In Schedule B-21 of Debtor's Amended Bankruptcy Schedules filed on August 2, 2013, Debtor asserted that it held claims against Creditor, but identified the amount of those claims as "unknown."

E.    Since filing its Amended Bankruptcy Schedules, Debtor has conducted further analysis and determined that: (i) it has no claims against Creditor, (ii) it has no defenses, counterclaims, or setoffs of any nature to Creditor's Claim. Debtor's Chief Executive Officer, John Ballard, testified under oath at the Section 341 Meeting of Creditors held on August 13, 2013 that the Debtor has no claim against Creditor.

01794619.3

F.     Purchaser is a shareholder who holds a minority interest in Debtor's common stock, and is interested in Debtor's effectuation of a successful reorganization.  To that end, Purchaser desires to purchase Creditor's Claim on the terms and subject to the conditions set forth herein.

G.     Creditor is willing to sell Creditor's Claim to Purchaser on the terms and subject to the conditions set forth herein.

H.     In its business judgment, Debtor deems the proposed sale of Creditor's Claim to Purchaser to be beneficial to the bankruptcy estate and to Debtor's prospects for a successful reorganization.

NOW THEREFORE, in consideration of the foregoing recitals and for other good and valuable consideration, including the promises and agreements set forth hereinbelow, the Parties agree as follows:

### Agreement

1.     Bankruptcy Court Approval.  All terms of this Agreement are subject to and conditioned on entry of an order of the Bankruptcy Court approving this Agreement ("**Approval Order**").  Debtor shall be responsible for submitting a motion to approve this Agreement, together with an appropriate notice to all required interested parties and a proposed Approval Order, all of which are subject to prior review and approval by the other Parties before being filed with the Bankruptcy Court. In the event the Bankruptcy Court does not enter the Approval Order, this Agreement shall be null and void and Creditor shall retain ownership of and all rights with respect to Creditor's Claim.

2.     Allowance of Creditor's Claim in Full.  Creditor's Claim shall be allowed in the full amount set forth in Creditor's Proof of Claim.  Debtor disclaims, waives, and releases any and all defenses, counterclaims, or setoffs of any nature against Creditor's Claim.

3.     No Estate Claims Against Creditor.  After further investigation and assessment, Debtor acknowledges and agrees that it has no claims of any nature against Creditor, including but not limited to all of Creditor's past and present attorneys.  Accordingly, Debtor disclaims, waives, and releases any and all claims, whether known or unknown, discovered or undiscovered, and foreseen or unforeseen, against Creditor (including but not limited to all of Creditor's past and present partners, limited partners, employees, agents, servants, attorneys, and insurance carriers) arising out of, based upon, or relating in any way to the legal services provided by Creditor to Debtor and all other matters, things, events, acts, and transactions occurring between Creditor and Debtor up to and including the date of the Approval Order. Promptly following entry of the Approval Order, Debtor shall file an Amended Schedule B-21 that deletes any reference to a claim against Creditor.

4.     Purchase Consideration.  The purchase consideration for Purchaser's acquisition of Creditor's Claim shall be $110,000.00 (US) in good funds ("**Purchase Consideration**"). Purchaser represents and warrants that the Purchase Consideration was funded by Purchaser, and

-2-

that no portion of the Purchase Consideration was funded in any way by or from the assets, monies, or property of the Debtor or of the Debtor's bankruptcy estate. Purchaser shall escrow the entire amount of the Purchase Consideration with counsel for Debtor on or before August 28, 2013. On or before that date, counsel for Debtor shall confirm by email to Creditor that the entire amount of the Purchase Consideration is and will remain in his firm's trust account pending entry of the Approval Order.

5.    Purchase Transaction.   Creditor agrees to sell, transfer, and assign Creditor's Claim to Purchaser for the Purchase Consideration, without representation or warranty of any kind except that Creditor owns Creditor's Claim, that Creditor's Claim is not subject to any claims or liens, and that Creditor has all necessary power and authority to convey Creditor's Claim to Purchaser for the Purchase Consideration. Purchaser agrees to purchase and accept transfer and assignment of the Claim, on the foregoing terms, for the Purchase Consideration.

6.    Closing.  Closing on Purchaser's purchase of Creditor's Claim shall occur not later than two business days after entry of the Approval Order. Counsel for Debtor shall wire transfer the Purchase Consideration to Creditor's designated account. Upon wire transfer of the Purchase Consideration to Creditor, and after the Approval Order has become final and non-appealable, Purchaser shall be entitled to file a notice of transfer of claim pursuant to Rule 3001(e)(2) of the Federal Rules of Bankruptcy Procedure.

7.    Creditor's Delivery of Files to Debtor.  Creditor holds a number of client files, both electronic and written, with respect to legal work it undertook on behalf of Debtor pre-petition. Within five business days after the Approval Order has become final and non-appealable, Creditor shall make such client files (except for attorney work product) available to Debtor or its counsel.

8.    Future Representation.  Debtor and Creditor acknowledge that during the course of Creditor's legal representation of Debtor pre-petition, Creditor acquired substantial knowledge and information about Debtor and its business operations. Creditor agrees to keep such information confidential and privileged. Creditor further agrees not to represent any creditor, shareholder, officer, director, or other party with a claim against or interest in Debtor.

9.    Binding Agreement.  Upon entry of the Approval Order, this Agreement and each of its terms shall become binding upon and inure to the benefit of, and be enforceable by, the Parties and their respective successors, administrators, trustees, executors, and assigns. Specifically and without limitation, this Agreement and all terms hereof: (i) shall be binding upon the Debtor and the bankruptcy estate under any and all circumstances, including under the terms of any Chapter 11 plan of reorganization approved in this Bankruptcy Case, after conversion of this Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code, or after dismissal of this Bankruptcy Case, and (ii) shall be binding upon any successor to the Debtor, including any trustee that may be appointed in the pending Chapter 11 case, or any trustee appointed after conversion of this case to Chapter 7 of the Bankruptcy Code.

10.    Entire Agreement; Amendment.  This is the entire agreement of the Parties with respect to the matters described herein, and integrates all prior and contemporaneous discussions

and agreements related thereto.  This Agreement may be amended only by a writing signed by the Party to be bound by such amendment.

11.     Nonreliance.  The Parties expressly assume any and all risks that the facts and law may be different from the facts and law as known to, or believed to be, by each such Party as of the date of this Agreement, and agree and understand that this Agreement shall be effective and enforceable according to its terms even if the facts and/or law turn out to be different than such Party knows or believes them to be as of the date hereof.

12.     Acknowledgment of Legal Advice.  The Parties acknowledge and agree that they enter into this Agreement after consultation with their attorneys, that their attorneys have explained the terms of this Agreement, and that they fully understand and voluntarily accept its terms.  Without limiting the generality of the foregoing, Purchaser acknowledges, represents, and warrants specifically that she has received, or had an opportunity to receive, independent legal advice from her own independent counsel with respect to the advisability of purchasing Creditor's Claim and entering into this Agreement. The Parties further acknowledge and agree that each Party shall bear its own fees and costs in connection with negotiating and preparing this Agreement and the underlying disputes resolved by this Agreement.

13.     Counterparts.  This Agreement may be executed in counterparts and by facsimile or digital scan, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement.

14.     Rule of Construction.  The Parties and their respective counsel have reviewed this Agreement and agree that any rule of construction that would require an ambiguity, if any, in this Agreement to be construed against the drafter shall not be employed in the interpretation of this Agreement.

15.     Choice of Law.  The Parties acknowledge and agree that this Agreement shall be construed under, and interpreted in accordance with, the laws of the State of Colorado and the bankruptcy laws of the United States.

16.     Use of Headings.  The Parties acknowledge and agree that all headings contained in this Agreement are used solely for the convenience of the Parties and are not to be interpreted as part of this Agreement.

17.     Authority of Signatories.   The individuals signing this Agreement in a representative capacity represent and warrant that they have the authority to sign this Agreement on behalf of their respective entities. Each Party represents, warrants and agrees that it, he or she has not previously assigned or transferred, or purported to assign or transfer, or agreed to assign or transfer, to any person or entity, any right, claim, cause of action or action, or any portion or interest therein, against any other party to this Agreement.

-4-

Executed by each Party on the date(s) set forth below.

**DEBTOR:**

**Worldwide Energy and Manufacturing USA Inc.,**
**a Colorado corporation**

By: _____

Title: _____ Chief Financial Officer

Date: _____ 8/26/13

**CREDITOR:**

**Moye White LLP**

By: _____

Title: Partner

Date: 8-26-13

**PURCHASER:**

Teresa A. McClaran

Teresa A. McClaran, individually

8/26/13

Date

-5-