**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: ) | |
| WORLDWIDE ENERGY & ) | |
| MANUFACTURING USA INC. ) | Case No.13-21577 MER |
| ) | |
| EIN: 77-0423745 ) | Chapter 11 |
| Debtor ) | |

**THE UNSECURED CREDITORS COMMITTEE'S OBJECTION TO THE DISCLOSURE STATEMENT TO ACCOMPANY AMENDED PLAN OF REORGANIZATION DATED OCTOBER 28, 2013**

The Official Committee of Unsecured Creditors, (the "Committee"), by and through their counsel, Onsager, Staelin & Guyerson, LLC, hereby files this Objection to the Disclosure Statement to Accompany Amended Plan of Reorganization Dated October 28, 2013 (this "Objection"). In support thereof, the Committee states as follows:

**PROCEDURAL BACKGROUND**

1. On July 5, 2013, Worldwide Energy & Manufacturing USA Inc. ("Worldwide" or "Debtor"), filed for relief under Chapter 11 of the United States Bankruptcy Code and has been operating as a debtor-in-possession.

2. On September 6, 2013, the Committee was formed pursuant to 11 U.S.C. §1102 by the U.S. Trustee's appointment.

3. On November 12, 2013, Debtor filed its Proposed Amended Plan of Reorganization and accompanying Disclosure Statement ("Plan") and Disclosure Statement.

**ARGUMENT AND AUTHORITY**

4. "The disclosure statement was intended by Congress to be the primary source of information upon which creditors and shareholders could rely in making an informed judgment about a plan of reorganization." *In re Scioto Valley Mortgage Co.,* 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988).

5. Section 1125(b) provides:

> An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such solicitation, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing *adequate information.*

11 U.S.C. § 1125(b) (emphasis added).

      6.      "Adequate information" is defined by the Code to mean:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan.

11 U.S.C. § 1125(a)(1).

      7.      In light of these well-known standards and overall purpose of disclosure, the Committee is concerned about the lack of full disclosure of several significant matters in the Disclosure Statement and its lack of transparency which prevent claim holders from making an informed decision on the proposed Plan.

      8.      The Disclosure Statement at p. 6 and 7 fails to fully disclose the roles of certain key persons at Worldwide leading to the firm's collapse and the SEC investigation of Worldwide. It appears that many of those persons are involved with Worldwide to this day and will continue to be involved post confirmation.

      9.      The Debtor should disclose at pp. 6 and 7 that Jimmy and Mindy Wang founded the Debtor as a private company around 1994. Separately, John Ballard and Diane Thelen, his business partners, set up 5 shell public companies (Tabatha entities) that are incorporated in Colorado. In about 2003 Ballard, Thelen and Wang took the Debtor public on the OTC in one of the Tabatha entities. Mr. Ballard became the CFO of the Debtor at that time and joined Jimmy and Mindy Wang as the 3 board of director members.

      10.      The Debtor should disclose that in April of 2011 Mr. Jimmy Wang was discharged by the then existing board of Worldwide from his position as CEO and Chairman of the Board. His wife Mindy Wang was also discharged from her position as Secretary and Treasurer and all offices or positions held at Worldwide, see **Exhibit "A"** hereto. The CFO at that time (not Mr. Ballard) of Worldwide was forced to resign as well.

      11.      Mr. and Mrs. Wang were later specifically ordered by the Security & Exchange Commission ("SEC") not to associate themselves as an officer or director with any public company as a result of their prior acts of misrepresentation as Worldwide shareholders and insiders, see **Exhibit "B"** hereto from the SEC official website. The Wangs admitted to making false and misleading statements to shareholders and others.

      12.      Ballard, Wang, and Thelen, along with some family members, are now either consultants or independent contractors to the Debtor, or in the case of Mr. Ballard the current

(and future) CFO and manager of the reorganized Debtor. *These facts are important for voting creditors to know.*

13. As already disclosed by the Debtor at p.7 of the Disclosure Statement, in September of 2012 the SEC investigation resulted in Worldwide agreeing to a $100,000 fine and being delisted from all public stock exchanges. Mindy Wang was fined $50,000 and both Mr. and Mrs. Wang were barred from being an officer or director of a public company. *It is only because of the delisting of Worldwide that Mr. or Mrs. Wang are allowed to have director, officer or management involvement with Worldwide, a fact not disclosed by the Debtor.*

14. The Disclosure Statement does not adequately disclose that both Mr. and Mrs. Wang are currently paid 'consultants' to the Debtor. Their consultant or employment agreements have not been approved by this Court. Mr. Wang receives $6,750 per month as a 'sales representative' and Mrs. Wang receives $6,000 per month to 'manage' the California office. Neither of these executory contracts were originally scheduled or disclosed by the Debtor. *Moreover, the current and future involvement of Mr. and Mrs. Wang with the Debtor is not disclosed or discussed.*

15. The Disclosure Statement does not adequately disclose that Diane Thelen, a business associate of Mr. Ballard, the current CEO of the Debtor, is herself a former officer and director of Worldwide. Ms. Thelen is currently a paid consultant to the Debtor at $2,500 per month to 'assist in document preparation and assist the Chairman of the Board'. *Ms. Thelen's current and future role with the Debtor is not disclosed or discussed.*

16. It is also believed that Ms. Wang's niece and Mr. Wang's sister are now employed by the Debtor. Ms. Tiffany Liu, a board member, is the wife of one the Debtor's freight suppliers.

17. The Committee, through counsel, expressed many of these concerns to Debtor's counsel via e-mail on October 27, 2013, which was responded to by Debtor's counsel on November 6, 2013, see **Exhibit "C"** hereto. Few, if any, of the matters disclosed by Debtor's counsel in the e-mail reply are contained in the Disclosure Statement despite ample opportunity to do so.

18. Also not disclosed at pp. 6 to 7 of the Disclosure Statement is that Mr. Wang is the party who furnished the majority of the funds to Ms. Teresa A. McClaran for the purchase of the Moye-White Proof of Claim. On August 16, 2013 the law firm of Moye-White LLP ("Moye-White") filed Proof of Claim No. 4-1 in the unsecured amount of $398,980.83 ("Claim"). Ms. McLaran is the sister of Diane Thelen. Ms. Thelen also provided some of the funds used by Ms. McClaran for the Claim purchase. The Moye-White Claim is one of the largest unsecured claims filed thus far against the estate. The Committee has preserved all of its rights to object to the voting of the Claim by the holder thereof. *All of these relationships and dealings should be fully disclosed in the Disclosure Statement.* [1]

---

[1] The Joint Stipulation, Docket No.104, entered into by the Debtor, the Committee and Moye-White and approved by the Court concerning the Claim purchase includes the following provision: The Debtor, the Committee and Moye-White agree that nothing in Debtor's Motion or the Agreement attached to it, Docket No. 84, shall impair or impede any and all rights of the Committee to

19. The Disclosure Statement does not adequately describe at p. 9 what will happen to any preference or other avoidable transfer claims while payments are being made to those unsecured creditors who elect to receive deferred payments under the Plan over the five (5) year period. Specifically no mention is made of tolling the running of the applicable statute of limitations period for bringing them. If the limitation period for pursuing such claims is to be tolled and preserved for the benefit of a future trustee should conversion, or a later Plan default occur, then the preservation should be disclosed. If the rights will be allowed to expire, then that fact needs to be disclosed as well.

20. The Disclosure Statement does not adequately explain at P. 9 the factors and considerations that went into the Debtor's decision not to pursue avoidance actions against certain key insiders, (Thelen, Ballard, Liu and Shum) all of whom are currently involved with the Debtor, and yet deciding to pursue a claim's objection and possibly avoidance action against the Chairperson of the Committee, Mr. Gary Koos.

21. The Disclosure Statement does not address the Debtor's apparent decision not to object to the unsecured claim asserted by Mr. Jimmy Wang for $150,000 as set forth in the Debtor's Schedules with no explanation as to the basis for the amount claimed. The Debtor has not listed the claim as disputed. If the Debtor does not intend to object to the asserted claim, the Committee reserves its rights to do so.

22. Similarly the Disclosure Statement does not indicate if the Debtor will object to the 'unknown' amount listed in the Schedules as owed to Mr. Wang for his costs and attorney's fees in defending the SEC investigation leading up to the delisting of Worldwide and its $100,000 SEC fine. The Debtor has not listed the claim as disputed or contingent even though it is scheduled for an unknown amount. If the Debtor does not intend to object to the asserted claim, the Committee reserves its rights to do so.

23. The Disclosure Statement does not address if the Debtor will object to POC 15 filed by Jimmy Wang claiming, among other amounts, unpaid vacation time of $82,624.18, $185,000 in unreimbursed legal fees, and other unknown and contingent amounts. If the Debtor does not intend to object to the asserted claim, the Committee reserves its rights to do so. The Committee has expressed its belief to Debtor that adequate grounds exist for objecting, see Exh. "D" hereto.

24. The Disclosure Statement does not address if the Debtor will object to POC 16 filed by Mindy Wang claims similar amounts of vacation time of, $185,000 in unreimbursed legal fees, and other unknown and contingent amounts. If the Debtor does not intend to object to the asserted claim, the Committee reserves its rights to do so. The Committee has expressed its belief to Debtor that adequate grounds exist for objecting, see **Exhibit "D"** hereto.

25. The Disclosure Statement does not address if the Debtor will pursue monetary

---

later seek subordination, offsets, or defenses to the Purchaser's, or any subsequent holder's use of the Claim solely as they may arise with regard to the Claim in the hands of the Purchaser or any subsequent holders of the Claim.

damage claims of the Debtor against the Wangs for breach of fiduciary duty while officers or directors of the Debtor, breach of contract, fraud and misrepresentation and other claims for damages that may exist. If the Debtor does not intend to do so, the Committee may seek permission to file an adversary action.

26. The Disclosure Statement does not address if the Debtor will seek equitable subordination of the Wangs Claims to that of other bona fide and non- insider unsecured debt. If the Debtor does not intend to do so, the Committee may seek permission to file an adversary action.

27. The Disclosure Statement does not address why the Debtor has decided to include as general unsecured debt the intercompany debt of WEMU – Nantong and whether any setoffs may exists to the amount claimed of $279,169.53. If the Debtor does not intend to object to the asserted claim, the Committee reserves its rights to do so.

28. The Committee objects to the Disclosure Statement for Debtor's failure at p. 13 to provide adequate information regarding the actual sale value of the Chinese assets and how the liquidation value of zero for those assets was arrived at. The ("Liquidation Analysis"), Exhibit 'D" is misleading and inaccurate. The Debtor's bald statement that the Chinese assets have no liquidation value because liquidations of companies are not permitted in China, *assuming arguendo to be true*, ignores the simple fact that wholly owned or partially owned Chinese companies or their assets are frequently bought in the United States and China. The potential sale value of the assets in China may be significant to the Debtor and its creditors. Even in Chapter 7 liquidation the controlled sale of operating or non-operating Chinese's companies or assets to other third parties may be feasible, and indeed may be more desirable than allowing current management to retain and operate Worldwide. *Creditors should be given enough information to make that informed decision.*[2]

29. The Disclosure Statement fails to comply with 11 U.S.C. § 1129(a)(5). The Disclosure Statement a p. 23 fails to identity of the current and proposed members of the board of directors and officers of the Debtor and their duties, responsibilities and levels of compensation, *all of which should be disclosed*. Any insiders or relatives of insiders serving as employees, officers, consultants, or otherwise should be disclosed along with their duties and compensation arrangements. The independence or lack of independence of the board and the officers needs to be fully disclosed.

30. The Committee objects to the Disclosure Statement in that Debtor has failed to provide adequate information relating to the seven year projections that are attached as Exhibit C to the Disclosure Statement (the "Projections"). Specifically, the Committee notes that the Projections show a significant increase in gross and net sales as forecasted from 2014 to 2020 with the accumulation of over 10.0 million dollars in gross profit at the end of that period; yet there is no meaningful explanation as to where that increase in sales revenue is being generated

---

[2] The Committee is aware that in 2012 Mr. Ballard and Ms. Thelen made an offer to purchase certain assets of the Debtor, including certain of the Chinese assets and operations, for an amount in excess of $1.0 million. The Debtor should disclose the nature of this offer and any other similar offers received as that information directly impacts a creditor's evaluation of the merits of the Debtor's liquidation analysis and Projections.

5

from. Moreover, the Projections fail to provide any alternative scenarios showing the impact of any shortfalls in the projected sales revenue forecasts.

31. The Disclosure Statement at pp. 24 and 25 fails to account for alternative outcomes negative to the Debtor's cash flow assumptions and does not adequately explain the basis for the assumptions made. The future cash flow projections and assumption are critical to any creditor's evaluation of the Debtor's Plan.

32. The total amount of payroll and benefit expenses shown in the Projections is $300,000 and $120,000 per year respectively without any breakdown as to what those significant monthly expenses are for and to whom those payments are to be paid, especially executive compensation. Moreover the expenses are projected to remain flat over the entire seven year period of the Projections, which seems unrealistic and inaccurate.

33. The Projections fail to include a reserve for disputed claims that may be allowed in the future, including the potential priority wage claim and unsecured claim of Mr. Gary Koos.

34. *In addition, though Exhibit A to the Disclosure Statement identifies approximately $2,800,000 in unsecured claims, the Projections show payments on unsecured claims totaling approximately $1,800,000. Debtor does not explain the discrepancy.* The amount Debtor must pay on unsecured claims, whether it's the up-front 20% or 100% over seven years, has material affect on "net cash" in the Projections.

35. The Projections fail to provide for the payment on the Effective Date or at any time thereafter of all Administrative Expenses, including but not limited to those of the Committee and its retained counsel. Committee counsel has not agreed to any other treatment for its likely administrative expense claim other than as required by the Code.

36. The Disclosure Statement fails to adequately and fully disclose the relationships between the Debtor and the holders of those executory contracts and leases that Debtor will assume as set forth in Exhibit "A" to the Amended Plan. Jimmy Wang, Mindy Wang, Diane Thelen, Shui Shum, Tiffany Liu, and Mr. Ballard are all insiders or related to insiders or business partners of insiders who are being compensated at this time, some as 'independent consultants' and others as 'independent contractors.' *Court approval has not been sought for any such contracts or payments.*

37. Similarly, Debtor indicates in its Plan that it intends to "assume all leases and contracts not specifically rejected." This does not inform creditors in any meaningful way what contracts or leases may be assumed and whether any cures are necessary for the assumptions to occur.

38. In short, the Committee objects to the Disclosure Statement on the basis that Debtor has not provided adequate information for creditors to make an informed judgment about the feasibility of Debtor's Plan, from a financial, operational, and management perspective. The Committee is greatly concerned over the apparent lack of good faith of the Plan proponents in not fully disclosing the involvement of certain insiders and relatives or business associates of

insiders in the Debtor's current and future operations.

39. While perhaps best addressed at confirmation, the overall good faith of the Plan and its proponents is of great concern to the Committee. The actions of Mr. And Mrs. Wang, Ms. Thelen, and the acquiescence of Mr. Ballard to those actions, demonstrates a concerted effort to eliminate all current equity holder positions, eliminate all pending shareholder damage claims, eliminate unsecured or priority claims of perceived 'villains' of the Debtor such as Committee Chairperson Mr. Koos, all while holding controlling amounts of unsecured debt, some for very dubious amounts, either in their own names or through straw persons. That unsecured debt, if not objected to and allowed to vote for the Plan, will later very likely be converted to equity in the reorganized Debtor by the holders of those claims as set forth in the Plan, resulting in total control of the reorganized Debtor by the very persons who assisted in its collapse as a publically traded company.

40. The Committee reserves all right to further object to Debtor's Disclosure Statement and any amendment thereof, should any additional information be subsequently discovered by the Committee.

WHEREFORE, the Committee respectfully requests that this Court enter an order denying approval of the Disclosure Statement; or alternatively, requiring the Debtor to further amend its Disclosure Statement to address the issues raised in this Objection; and for such further relief as is just and proper.

Dated: November 22, 2013          Respectfully submitted,

**Onsager, Staelin & Guyerson, LLC**
s/ Michael J. Guyerson
Michael J. Guyerson, #11279
1873 S. Bellaire St., Suite 1401
Denver, CO 80222
Ph: (303) 512-1123
Fax: (303) 512-1129

**Counsel for the Official Committee of Unsecured Creditors**

**Certificate of Service**

      The undersigned hereby certifies that on this 22nd day of November, 2013, a true and correct copy of the forgoing **THE UNSECURED CREDITORS COMMITTEE'S OBJECTION TO THE DISCLOSURE STATEMENT TO ACCOMPANY AMENDED PLAN OF REORGANIZATION DATED OCTOBER 28, 2013** was placed in the U.S. Mail, postage prepaid, correctly addressed to the following:

| | | |
|---|---|---|
| Gary Koos<br>1864 Sannita Ct.<br>Pleasanton, CA  94566 | Alan Chinn Group<br>4301 Hacienda Dr., #200<br>Pleasanton, CA  94588 | Pahl & McCay, PLC<br>Fenn C. Horton III<br>225 W. Santa Clara Street, #1500<br>San Jose, CA  95113-1752 |
| Lee M Kutner<br>Kutner Brinen Garber, P.C.<br>303 E. 17th Ave., Suite 500<br>Denver, CO  80302 | Alan K. Motes, Esq.<br>Office of the U.S. Trustee<br>999 18th Street, Suite 1551<br>Denver, CO  80202 | James T. Burghardt, Esq.<br>Moye White LLP<br>1400 16th Street, 6th Floor<br>Denver, CO  80202-1473 |
| Sonia Chae, Esq.<br>Securities and Exchange Commission<br>175 West Jackson Blvd., Suite 900<br>Chicago, IL  60604 | Carla B. Minckley, Esq.<br>Thomas D. Birge, Esq.<br>Birge & Minckley, P.C.<br>9055 E. Mineral Cir., #110<br>Centennial, CO  80112 | Worldwide Energy & Manufacturing USA Inc.<br>6754 W. Hinsdale Ave.<br>Littleton, CO  80128 |
| Craig M. J. Allely<br>Perkins Coie LLP<br>1900 Sixteenth St., Suite 1400<br>Denver, CO  80202-5255 | Zane Gilmer<br>Perkins Coie LLP<br>1900 Sixteenth St., Suite 1400<br>Denver, CO  80202-5255 | |

Dated:  November 22, 2013                    By: s/Angie Garcia